UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **OTIS GREEN, JR.,** | ) | |
| | ) | |
| Plaintiff, | ) | No. 17 C 8356 |
| | ) | |
| v. | ) | Magistrate Judge M. David Weisman |
| | ) | |
| **NANCY A. BERRYHILL, Deputy** | ) | |
| **Commissioner for Operations,** | ) | |
| performing the duties and functions | ) | |
| not reserved to the Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Otis Green, Jr. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration ("SSA's") decision denying his application for benefits. For the reasons set forth below, the Court reverses the SSA's decision.

**Background**

Plaintiff applied for disability benefits on January 30, 2014, alleging a disability onset date of July 1, 2012. (R. 62-63.) His application was initially denied on July 18, 2014, and again on reconsideration on March 26, 2015. (R. 62, 69.) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on August 31, 2016. (R. 18-55.) On November 4, 2016, the ALJ issued a decision finding plaintiff not disabled. (R. 73-83.) The Appeals Council denied review (R. 1-3), leaving the ALJ's decision as the final decision of the SSA. *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the SSA must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the SSA to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of July 1, 2012. (R. 75.) At step two, the ALJ found that plaintiff has the severe impairments of "left shoulder pain and chronic low back pain." (*Id.*) At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (*Id.*) At step four, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform his past relevant work ("PRW") as a forklift operator, machine packager, laborer, machine feeder, construction laborer, and material handler and thus is not disabled. (R. 76-82.)

The ALJ rejected plaintiff's allegations about his symptoms[1] in part because the record "reflects a history of sporadic, routine, and conservative treatment." (R. 77.) Plaintiff does not dispute this assertion but argues that the ALJ was obligated to ask why plaintiff did not seek more aggressive or more frequent treatment before holding its absence against him. The Seventh Circuit agrees:

> Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference. An ALJ may need to question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The claimant's "good reasons" may include an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects. Here, the ALJ made no effort to question Shauger about the perceived gaps in his treatment history between 1988 and 2009.

*Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (quotations and citations omitted); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (same); *see* SSR 16-3p, 2017 WL 5180304, at *9 (Oct.

---

[1] The SSA has issued new guidance for evaluating symptoms in disability claims, which supersedes SSR 96-7p and "eliminat[es] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). However, the factors to be considered in evaluating symptoms under either SSR 96-7p or SSR 16-3p are the same. *Compare* SSR 96-7p, 1996 WL 374186 (July 2, 1996), at *3, *with* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017).

25, 2017) ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . , we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints.").[2] Because the ALJ here did not ask plaintiff why he had not sought more aggressive or frequent treatment, she should not have drawn an adverse inference from the amount and kind of medical treatment plaintiff received.

The ALJ also drew an adverse inference from plaintiff's certification to the unemployment agency that he could work. (*See* R. 79.) The ALJ was allowed "to give some consideration" to that fact in assessing plaintiff's credibility. *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014). But drawing a negative inference from such a certification must be done "with significant care and circumspection" after "[a]ll of the surrounding facts [have been] carefully considered." *Id.* The ALJ did not ask plaintiff why he told the unemployment agency he could work after the alleged onset of his disability. Had she done so, plaintiff might have provided a good reason for the certification, *e.g.*, that he remained able to do sedentary or light work, though not his medium/heavy past relevant work, or was suffering economic hardship,

---

[2] The prior version of this regulation, SSR 96-7p, contains nearly identical language. *See* SSR 96-7p, 1996 WL 374186, at *7 (July 2, 1996).

which would make an adverse inference inappropriate.[3] The ALJ's failure to investigate the circumstances under which plaintiff made the able-to-work certification was error. *Id.*

The ALJ also rejected plaintiff's symptom allegations because the record does not contain "objective medical evidence" to support them. (R. 78.) As an initial matter, plaintiff's symptom is pain, and an "ALJ may not discredit a claimant's testimony about [his] pain and limitations solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562.

Moreover, the ALJ rejected plaintiff's allegations without considering, or at least without discussing, an important piece of objective medical evidence, a September 2014 MRI of plaintiff's back. The MRI findings include: "lumbar spondylosis[4] . . . with associated degenerative disc desiccation at L5-S1"; "L5-S1 diffuse underlying generalized posterior disc bulge with a superimposed broad-based central disc protrusion measuring 2.5 mm" and "associated posterior midline annular[5] tear"; "L3-L4 and L4-L5 mild diffuse bilobed disc bulges which combine with facet arthropathy[6] to produce mild stenosis[7] of the lateral recesses and neural foramina bilaterally." (R. 355.) Whether these conditions could cause the pain of which plaintiff complains is a question for the medical professionals, but it is one they did not answer.

---

[3] The SSA argues that a function report plaintiff submitted in May 2014 shows that he did not think he was capable of even sedentary work at that time because "he could not sit for very long." (SSA's Mem. Supp. Summ. J., ECF 21 at 3.) What plaintiff actually said in the undated report is "when I sit long my back hurt." (R. 189.) It is not clear, however, what he meant by "long" or whether pain from sitting would preclude him from doing sedentary work.
[4] Spondylosis is "degenerative spinal changes due to osteoarthritis." spondylosis, *Dorland's Illustrated Medical Dictionary* (32d ed.).
[5] Annular means "shaped like a ring." annular, *Dorland's Illustrated Medical Dictionary* (32d ed.).
[6] Arthropathy means "joint disease." arthropathy, *Dorland's Illustrated Medical Dictionary* (32d ed.).
[7] Stenosis of the neural foramina bilaterally means narrowing of both sides of the nerve passageway in the spine. stenosis, foramina, neural, *Dorland's Illustrated Medical Dictionary* (32d ed.).

(*See* R. 59-60, 66-67, 293-96, 300-03.)  Given this apparent oversight, the ALJ's conclusion that plaintiff's symptoms are not supported by objective medical evidence cannot stand.[8]

Plaintiff also challenges the ALJ's rejection of Dr. Vaidya's opinion.  Dr. Vaidya, who performed a consultative examination of plaintiff on behalf of the SSA, concluded that plaintiff had "back pain, with mild changes of left lumbar radiculopathy"[9] and "left shoulder pain," which "mildly limited" his "ability to carry out work-related activities."  (R. 302-03.)  The ALJ rejected Dr. Vaidya's opinion, primarily because it was inconsistent with the treatment notes in the record.  (R. 79.)  However, the doctor's opinion is entirely consistent with the 2014 MRI, which as noted above, the ALJ overlooked.  Accordingly, the ALJ's assessment of Dr. Vaidya's opinion is not supported by substantial evidence and will have to be revisited on remand.

### Conclusion

For the reasons set forth above, the Court denies the SSA's motion for summary judgment [20], reverses the SSA's decision, and remands the case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**                          **ENTERED:   June 19, 2018**

_____
**M. David Weisman**
**United States Magistrate Judge**

---

[8] Plaintiff also contests the ALJ's RFC assessment.  (*See* Pl.'s Mem. Supp. Remand at 11-12.)  Because that issue is intertwined with the credibility/symptom evaluation, it will have to be revisited on remand as well.

[9] Lumbar radiculopathy is "any disease of the lumbar nerve roots, such as from disk herniation or compression by a tumor or bony spur, with lower back pain and often paresthesias" [, *i.e.*, "an abnormal touch sensation such as burning, prickling, or formication, often in the absence of an external stimulus."].  lumbar radiculopathy, paresthesia, *Dorland's Illustrated Medical Dictionary* (32d ed.).